HANNAH S. CAIL
COURTNEY COSGROVE
MONTANA DEPARTMENT OF REVENUE
Legal Services Office
125 North Roberts Street
PO Box 7701
Helena, MT 59604-7701
(406) 444-9532
Hannah.Cail2@mt.gov; Courtney.Cosgrove@mt.gov

MATTHEW T. COCHENOUR
COCHENOUR LAW OFFICE, PLLC
PO Box 1914
Helena, MT 59624
(406) 413-7004
matt@cochenourlawoffice.com

Attorneys for the Department

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| TOM REED, and JERRY REED,<br><br>Plaintiffs,<br><br>v.<br><br>BRENDAN BEATTY, in his official capacity as the Director of the Montana Department of Revenue,<br><br>Defendant. | CV-23-51-H-KLD<br><br><br>REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS |

# INTRODUCTION

The Department has moved to dismiss this case because the Reeds lack standing and because the issues presented are not ripe. In response, the Reeds spend significant portions of their brief arguing the merits of their constitutional claims and implying that the Department lacks respect for the Constitution. *E.g.*, Doc. 31 (Resp. Br. 1-3, 10, 14-17.) The Reeds' arguments miss the mark.

First, the merits of the case are not at issue. This motion is about whether the Reeds have even satisfied their burden to bring this case. Second, and relatedly, far from being "dismissive" of the Constitution, the Department seeks relief based on requirements grounded in the Constitution, which limits federal court jurisdiction to only actual cases and controversies. U.S. Const. art. III, § 2; *Allen v. Wright*, 468 U.S. 737, 750 (1984). Whatever the ultimate answer to the Reeds' challenges might be, they must first meet their threshold burden under the Constitution of establishing that a justiciable controversy even exists. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Because they have failed to do so, this Court should grant the Department's motion to dismiss.

**I.**   **The Reeds' conjecture that they might experience financial injury depending on the outcome of a state administrative proceeding involving someone else is not an "injury in fact."**

In its opening brief, the Department demonstrated that the Reeds have suffered no "injury in fact" because their speculative injuries are contingent on the

uncertain outcome of an ongoing administrative proceeding involving Therapeutic Essentials.

In response, the Reeds continue to connect their anticipated injuries to the Therapeutic Essentials proceeding. For example, the Reeds claim that they "want to avoid actual harm that the Department seems determined to inflict by revoking or suspending Therapeutic Essentials' license." Doc. 31 (Resp. Br.) 8. They argue that the "threat presented by the proceedings against Therapeutic Essentials is a very concrete form of harm for the Reeds, and they should have an opportunity to stop that harm from becoming real damage if the legal cause of the harm (Section 16-12-203(2)(g), MCA) is unconstitutional." Resp. Br. 6.

These statements make a number of things clear. First, the Reeds' financial harm has not yet happened. Second, the harm the Reeds have identified is contingent on events that may or may not happen in the future. Third, it is based on the uncertain outcome of an administrative action against *someone else*. This is not the concrete, actual injury the Constitution requires; rather it is a speculative fear that does not rise to an "injury in fact" for purposes of standing. *Lopez v. Candaele*, 630 F.3d 775, 786 (9th Cir. 2010) (citation omitted) (noting that the "touchstone for determining injury in fact is whether the plaintiff has suffered an injury or threat of injury that is credible, not 'imaginary or speculative.'")

The Reeds argue that they do not have to prove success on the merits to have

standing. No one disagrees. But while the Reeds do not have to prove success on the merits, they do have to prove that they have suffered an injury in fact, that the residency requirement caused the injury, and that a decision in their favor could redress the injury. *Lujan*, 504 U.S. at 560-61. Because they have failed to meet their burden, this Court should dismiss.

In an effort to avoid demonstrating any actual harm, the Reeds rely on cases involving pre-enforcement challenges to criminal statutes. These cases do not support the Reeds. First, *Bishop Paiute Tribe v. Inyo County* is a case involving an actual injury and a credible threat of criminal prosecution. 863 F.3d 1144 (9th Cir. 2017). In that case, California state law enforcement arrested a tribal police officer for actions taken while detaining a suspect. *Bishop Paiute Tribe*, 863 F.3d at 1149. Following the arrest, state law enforcement instructed tribal police officers to "cease and desist" their exercise of peace officer authority or be subject to prosecution. *Id*. The Tribe sued, seeking to clarify the scope of its authority.

In determining that the Tribe had articulated an injury that was concrete, particularized, and actual or imminent, the Court noted that the Tribe had "been ordered to cease and desist" exercising its authority and had seen "one of its officers arrested and prosecuted" by state authorities. *Bishop Paiute Tribe*, 863 F.3d at 1153. Regarding the threat of future harm, the Court observed that, "[w]hile generalized threats of prosecution do not confer constitutional ripeness, a genuine

threat of imminent prosecution does." *Id*. at 1154. The Court reasoned that the case involved a genuine threat because, "in addition to the actual arrest and prosecution" of the tribal officer, the state's "cease and desist letter credibly threaten[ed] imminent future prosecutions" if the Tribe failed to follow the state's instruction. *Id*. at 1154.

Here, unlike *Bishop Paiute Tribe*, this case does not involve a criminal statute. Nor have there been any "cease and desist" or equivalent letters issued based on the residency requirement. There have been no marijuana license revocations based on the residency requirement. Even Therapeutic Essentials' administrative proceeding is not based on Montana's residency requirement. The Reeds identify no "genuine threat of imminent prosecution" that would give rise to an injury in fact. *Bishop Paiute Tribe*, 863 F.3d at 1153. And while it is true that Montana statutes limit licenses to Montana residents, "neither the mere existence of a proscriptive statute nor a generalized threat of prosecution satisfies the 'case or controversy' requirement." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 1998).

The Reeds also misplace their reliance on *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014). That case involved a pre-enforcement challenge to a criminal statute that prohibited core political speech in the lead-up to an election. The Court noted that in these types of pre-enforcement challenges, plaintiffs need

not violate a law and be arrested before they can challenge a law; however, they must show that the "threatened enforcement" is "sufficiently imminent." *Susan B. Anthony List*, 573 U.S. at 159. As argued previously, the Reeds have failed to show any imminent harm. Their alleged harms are based on what might happen if the Therapeutic Essentials' proceeding is resolved in a particular way.

Even when the Reeds try to personalize their harms, they fall short. For example, the Reeds argue that Jerry Reed is "in the process of moving to Montana" and that a "newly arrived citizen" should have the same rights as any other state citizen. Resp. Br. 14-15. Whatever sway that argument may have on the merits, it only highlights that Jerry Reed is not a resident of Montana, and thus, his ability to claim any rights as a Montana resident has not materialized and is speculative. Stated differently, the Reeds have no standing, and their claims are not ripe.

The Reeds also unpersuasively try to turn *Lujan* in their favor, arguing that, if "viewing wildlife in foreign countries constitutes a cognizable interest sufficient to confer standing," then the Reeds' ability to operate a marijuana business does too. Resp. Br. 8. This argument misses what the Court said on the issue. It is not enough to identify an abstract interest that could be the subject of a lawsuit; rather, the plaintiff must be the party with the interest that is injured. As the Court put it: "the 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." *Lujan*, 504

U.S. at 563 (quotation omitted). The problem here, as in *Lujan*, is that there is a disconnect between these components. The Reeds allege threatened harm from the Therapeutic Essentials administrative proceeding, which involves a different party and is not based on the residency requirement. But if the Reeds are harmed by the outcome of that proceeding (which is unknown), it will not be because of the residency requirement that they are challenging, but because of something that led to Therapeutic Essentials' license being revoked.

The Reeds' failure to link their alleged harm with the relief they seek also creates problems with the causation element of standing. Regarding causation, the Reeds assert that the Department has argued that Therapeutic Essentials' license is certain to be revoked, and therefore—according to the Reeds—the Department is the "agent of harm." Resp. Br. 5. But the Department has no way of knowing whether the license will be revoked or suspended. That is a decision for the administrative law judge, and the decision will be subject to judicial review. Moreover, as mentioned, the Reeds are not even a party to the administrative proceedings. And even if the administrative officer determines that Therapeutic Essentials' license should be revoked, that would not be because of the residency requirement. Whatever tangential impact a revocation of Therapeutic Essentials' license might have on the Reeds is a result of the Reeds' business decisions, not a result of the residency requirement.

Finally, regarding redressability, the Reeds assert that they are not asking this Court to rule that they can obtain a license, but only to remove one barrier to a license. Resp. Br. 10. But according to the amended complaint, the Reeds do not just want the Court to remove an impediment; rather, they claim that there is a controversy about their "rights and ability to purchase a marijuana license from a Montana business for the purpose of cultivating, manufacturing, and selling marijuana within the state of Montana." Doc. 28, ¶ 74. While they want the residency requirement struck down, it is not just so they can apply for a license; rather, they seek to "continue to operate" as they have been and "thereby protect the substantial investments they have already made in the Montana marijuana market." Doc. 28, ¶ 84. As pointed out in the Department's opening brief, however, the Reeds appear to have been operating in violation of Montana law. Under these circumstances, it is unlikely a court decision could provide the relief they seek.

## II.   If the Court does not dismiss, it should stay this case under *Pullman* because the state court proceedings could moot this federal controversy.

In its opening brief, the Department explained that abstention is appropriate because all three *Pullman* factors weigh in favor of abstention. First, the constitutional questions presented touch "on a sensitive area of social policy," specifically, Montana's (and the Nation's) shifting public policy views on

marijuana. *Gearing v. City of Half Moon Bay*, 54 F.4th 1144, 1147 (9th Cir. 2022) (citation omitted). Second, a state court ruling on the Reeds' state constitutional challenge could entirely moot this case, making it unnecessary for this Court to issue any constitutional ruling. Third, a "possibly determinative issue of state law is doubtful" because there has been no resolution of whether Montana's residency requirement is constitutional under the Montana Constitution. *Id*. (Citation omitted). Because the requirements for abstention are satisfied, the Court should stay this case pending the outcome of the state court proceedings if it does not dismiss the complaint.

  The Reeds advance several arguments against *Pullman* abstention, but none are persuasive. First, the Reeds assert that the interests underlying the Commerce and Privileges and Immunities Clauses "carry far more gravity from the federal perspective," and they then go on to argue the merits. Resp. Br. 14. But this argument discounts the important federalism principles underlying *Pullman*'s first factor. Rather than some sort of merits-based balancing test, the "sensitive social policy" factor "recognizes that abstention protects state sovereignty over matters of local concern, out of considerations of federalism, and out of 'scrupulous regard for the rightful independence of state governments.'" *Almodovar v. Reiner*, 832 F.2d 1138, 1140 (9th Cir. 1987) (quoting *Railroad Comm'r v. Pullman*, 312 U.S. 496, 501 (1941)). The shifting policies toward marijuana and Montana's regulatory

framework demonstrate that marijuana is a "sensitive area of social policy" that is a matter of local concern for the State. Abstention is appropriate.[1]

Moreover, the Reeds fail to explain why they think the interests underlying the Commerce Clause or the Privileges and Immunities Clause are more important than other constitutional provisions. After all, every case involving *Pullman* abstention includes important federal constitutional questions; indeed, the whole point of the doctrine is to allow federal courts to abstain from deciding "sensitive federal constitutional questions when state law issues may moot or narrow the constitutional questions." *San Remo Hotel v. City and County of San Francisco*, 145 F.3d 1095, 1104 (9th Cir. 1998). The notion that the Reeds' ability to grow and sell marijuana in Montana has more "gravity" than other cases involving constitutional rights is unsupportable.

Regarding the second *Pullman* factor, which is whether a state court ruling could moot this federal case, the Reeds argue that "[r]egardless of how a State Court interprets [the residency statute], the construction of the statute from a federal perspective . . . should only be interpreted by a federal court." Resp. Br. 17. This is both wrong and beside the point. First, state courts have general jurisdiction

---

[1] The Department is aware of another district court within the Ninth Circuit sua sponte invoking *Pullman* abstention to avoid deciding federal constitutional challenges to the State of Washington's cannabis residency requirement. *See Brinkmeyer v. Washington State Liquor & Cannabis Board*, Case No. C20-5661 BHS (October 5, 2020).

to decide federal constitutional issues. *See, e.g.*, *Claflin v. Houseman*, 93 U.S. 130, 136-37 (1876). But second, and more importantly, that is not the relevant question under the second *Pullman* factor. Under *Pullman*, the question is whether a definitive state court ruling could obviate the need for the federal court to decide the federal constitutional question in the first place. *Almodovar*, 832 F.2d at 1140.

*Almodovar* is instructive. That case concerned whether California's prostitution statutes could constitutionally apply to ban sexually explicit films. *Id*. at 1139. In addition to a federal lawsuit, there were concurrent state court cases raising similar challenges. *Id*. After first concluding that "the regulation of prostitution and sexually explicit films are controversial issues of great local interest," the court observed that the fact that "pending state court litigation between other parties might resolve the issues presented weighs in favor of abstention." *Id*. at 1140. Further, the court noted that "All of plaintiff's constitutional claims would be moot if the state supreme court decides that the statutes do not apply" and that "*Pullman* abstention was designed especially for this narrowing construction." *Id*. at 1140-41. Finally, the court reasoned that, if the California court were to decide that the prostitution statutes did not apply to explicit films, then the plaintiff "will have obtained all the relief she seeks without a federal decision on her constitutional claim." *Id*. at 1141. The Court held that *Pullman* abstention was proper. *Id*. at 1140.

Here, as in *Almodovar* and as already discussed, marijuana is an issue of "great local interest" under the first factor. Also, as in *Almodovar*, a decision in the pending state court case could moot this case because there would be no reason for this Court to decide the Reeds' constitutional claims if the state court ruled that Montana's residency requirement is unconstitutional. Like the *Almodovar* plaintiffs, the Reeds would "have obtained all the relief [they seek] without a federal decision on [their] constitutional claim." *Almodovar*, 832 F.2d at 1141.

The Reeds contend that a state court ruling on the constitutionality of Montana's residency requirement under the Montana Constitution has no bearing on whether the residency requirement would be lawful under the Constitution. Resp. Br. 18. That might be true, but it is not the issue. The importance of a state court ruling is not that it will aid in a federal court decision, but rather, that this Court might not have to decide a constitutional question *at all*. In sum, *the* second *Pullman* factor is satisfied because a state court ruling could remove the need for this Court to decide any constitutional questions. *Almodovar*, 832 F.2d at 1140.

The Reeds do not present a separate argument on the third *Pullman* factor. *See* Resp. Br. 17-18. But as argued in the Department's opening brief, the third factor is satisfied because it is unknown what the outcome of the state court proceedings will be regarding the constitutionality of Montana's residency requirement. The state court could uphold the residency requirement, or it could

rule that it is unconstitutional. Under *Pullman*, this Court should stay this case until the outcome is known.

Finally, the Reeds argue that the Therapeutic Essentials administrative proceeding does not provide a basis for abstention. The Department is not asking this Court to abstain based on that proceeding, which does not involve a challenge to the residency requirement. Rather, the Department is asking this Court to abstain in light of the pending state court litigation, in which the Reeds have brought constitutional challenges to the same statute that they challenge here.

## CONCLUSION

For the reasons set forth above and in the Department's opening brief, this Court should grant the Department's motion to dismiss, or alternatively, stay this case under the *Pullman* abstention doctrine.

DATED this 15th day of November 2023.

/s/ *Matthew T. Cochenour*
MATTHEW T. COCHENOUR
Attorney for Defendant

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Local Rule of Procedure 7.1(d)(2)(E), I certify that the foregoing document is printed with a proportionately spaced Times New Roman text typeface of 14 points, is double spaced, and the word count calculated by Microsoft Word is 2,839 words, excluding the caption, certificate of compliance, and certificate of service.

Dated this 15th day of November 2023.

/s/ *Matthew T. Cochenour*
Matthew T. Cochenour
Attorney for Defendant

## **CERTIFICATE OF SERVICE**

I certify that on November 15, 2023, I electronically filed the foregoing document(s) and that they are available for viewing and downloading from the Court's CM/ECF system, and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ *Matthew T. Cochenour*
Matthew T. Cochenour
Attorney for Defendant