IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| TOM REED and JERRY REED,<br><br>Plaintiffs,<br><br>vs.<br><br>BRENDAN BEATTY, in his official capacity as the Director of the Montana Department of Revenue,<br><br>Defendant. | CV-23-51-H-KLD<br><br>ORDER |

    This matter comes before the Court on three motions to dismiss filed by Defendant Brendan Beatty in his official capacity as Director of the Montana Department of Revenue ("Department" or "Defendant"). Defendant's first two motions seek to dismiss Plaintiffs Tom and Jerry Reed's ("Plaintiffs") original Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Doc. 11) and the Eleventh Amendment (Doc. 18). Defendant's third motion seeks to dismiss Plaintiffs' First Amendment Complaint ("FAC") pursuant to Rule 12(b)(1) and 12(h)(3) or, in the alternative, to stay these proceedings (Doc. 29). For the reasons discussed below, Defendant's Motions to Dismiss Plaintiffs' original Complaint are denied as moot and Defendant's Motion to Dismiss Plaintiffs' FAC

1

is granted.

I. **Background**

In 2021, the Montana Marijuana Regulation and Taxation Act ("MMRTA") legalized recreational marijuana use in the state. Under the MMRTA, the Department has the statutory authority to regulate domestic sales of marijuana in Montana. Mont. Code Ann. § 16-12-103 (2023). Section 16-12-203(2) contains several conditions that any putative holder of a marijuana license must satisfy, including that the Department "may not license a person under this chapter if the person or an owner, including a person with a financial interest … has resided in Montana for less than 1 year." Mont. Code Ann. § 16-12-203(2)(g). The Department assesses applications to determine if an applicant should be denied. Mont. Code Ann. § 16-12-104(5). Furthermore, "[a] licensee may sell its marijuana business … to a person who is licensed by the department under the provisions of this chapter." Mont. Code. Ann. § 16-12-104(14). In other words, the MMRTA requires Department authorization before a person may hold an ownership interest or "is otherwise in a position to control the marijuana business." Mont. Code Ann. §§ 16-12-102(7)(a)(iii), -104(14).

In the spring of 2021, Plaintiffs purchased 32 ownership units in a Montana limited liability company, MBM Management and Consulting, LLC ("MBM"), for $2.2 million. (Doc. 28, ¶¶ 10–15). Plaintiffs learned of MBM after reviewing an

online listing by Marc Hayes and Michael Smith. (Doc. 28, ¶ 10). Hayes and Smith represented that MBM was legally authorized to cultivate, sell, and produce marijuana in Montana. (Doc. 28, ¶¶ 10, 14). MBM operated under a marijuana license held by Therapeutic Essentials, LLC, and its owner, Montana resident Shonna Grinn. (Doc. 28, ¶ 19).

Plaintiffs purchased MBM in June 2022, investing additional monies beyond the initial $2.2 million purchase price. (Doc. 28, ¶ 24). In July 2022, Plaintiffs sued Smith and Hayes in the United States District Court for the District of Montana, styled *Reed v. Smith*, CV 22-41-GF-BMM. (Doc. 28, ¶ 34). Plaintiffs voluntarily dismissed the federal case and subsequently refiled in Madison County District Court alleging fraud, deceit, breach of contract, and other claims. (Doc. 28, ¶ 26). That lawsuit is still pending. *See Reed v. Smith*, DV-29-2022-88 (Madison County District Court, 5th Judicial District, Montana).

As part of the proceedings in Madison County, Plaintiffs subpoenaed the Department, seeking Therapeutic Essentials' records from the METRC system, a marijuana industry tracking software. (Doc. 28, ¶¶ 35, 36). In response, the Department requested additional financial information regarding MBM, Plaintiffs, and Therapeutic Essentials. (Doc. 28, ¶ 42). Subsequently, on March 21, 2023, the Department issued Therapeutic Essentials a "Notice of Proposed Department Action to Deny and Revoke Licenses and Opportunity for Hearing." (Doc. 28, ¶

43). In the Notice, the Department indicated its intent to revoke Therapeutic Essentials' license due to Grinn's alleged failure to disclose the relationship between MBM, Plaintiffs, and other individuals in her regulatory filings with the Department. (Doc. 28, ¶ 44). The revocation proceedings are currently pending before a Montana administrative law judge. *See In the Matter of Proposed Action No. 23-CCD-REV-053 Against Licensee Therapeutic Essentials, LLC, dba Canna Connection and Honey Sour, Holder of Montana Marijuana Licenses*.

Although not a party to the administrative action, Plaintiffs allege that they will incur "substantial financial losses" should the Department revoke Therapeutic Essentials' license. (Doc. 28, ¶ 48). Plaintiffs seek to protect their investment by acquiring their own marijuana license. (Doc. 28, ¶ 50). Plaintiffs are currently in negotiations with a Montana license holder to transfer a license to Creekside Consulting, a limited liability company Plaintiffs formed in 2022. (Doc. 28, ¶¶ 49, 50). Furthermore, Jerry Reed is moving to Montana and intends to become a Montana resident. (Doc. 28, ¶ 51). Once his residency is finalized, Jerry Reed will also seek ownership in a Montana license. (Doc. 28, ¶ 52).

On September 27, 2023, Plaintiffs filed the FAC—now the operative pleading—realleging their claims against Brendan Beatty in his official capacity as Director of the Montana Department of Revenue. (Doc. 28). Plaintiffs seek (1) a declaration that the residency requirement in Section 16-12-203(2)(g) violates the

Commerce Clause as applied to the facts of this case, (2) a declaration that the residency requirement in Section 16-12-203(2)(g) violates the Fourteenth Amendment Privileges or Immunities Clause as applied to Jerry Reed, and (3) a preliminary and permanent injunction prohibiting Director Beatty from enforcing Section 16-12-203(2)(g) against Tom Reed and/or Jerry Reed in a manner which would prohibit them from purchasing a marijuana license. (Doc. 28, ¶¶ 75–76, 84). Defendants now move to dismiss the FAC pursuant to Rules 12(b)(1) and 12(h)(3) or, in the alternative, to stay these proceedings pursuant to the *Pullman* abstention doctrine. (Doc. 29).

## II.  Legal Standard

Article III of the United States Constitution limits federal court jurisdiction to only actual cases and controversies. U.S. Const. art. III, § 2; *Allen v. Wright*, 468 U.S. 737, 750 (1984). Article III's case or controversy requirement mandates that plaintiffs have standing and that claims be "ripe" for adjudication. *Chandler v. State Farm Mut. Auto. Ins.*, 598 F.3d 1115, 1121 (9th Cir. 2010). Challenges to standing and ripeness are properly raised in a Rule 12(b)(1) motion to dismiss because both "pertain to federal courts' subject matter jurisdiction." *Chandler*, 598 F.3d at 1122. The party asserting federal subject matter jurisdiction bears the burden of establishing its existence. *Chandler*, 598 F.3d at 1122. "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears

5

the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Under Rule 12(h)(3), if a court "determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

"[T]he irreducible constitutional minimum of standing contains three elements": (1) "injury in fact," i.e., an "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) causal connection, i.e., that the "injury is fairly traceable to the challenged conduct of the defendant"; and (3) that the "injury will likely be redressed by a favorable decision." *Chandler*, 598 F.3d at 1122 (citing *Lujan*, 504 U.S. at 560–61). The "touchstone for determining injury in fact is whether the plaintiff has suffered an injury or threat of injury that is credible, not 'imaginary or speculative.'" *Lopez v. Candaele*, 630 F.3d 775, 786 (9th Cir. 2010) (citation omitted).

When faced with a motion to dismiss for lack of standing, the court must accept as true all material allegations in the complaint and must construe the allegations in the nonmovant's favor. *Chandler*, 598 F.3d at 1121. The court may not speculate as to the allegations' plausibility. *Chandler*, 598 F.3d at 1121.
//

## III. Discussion

### A. Motions to Dismiss Plaintiffs' Original Complaint

Plaintiffs filed their original Complaint against the Montana Department of Revenue on August 24, 2023 (Doc. 1). The Department moved to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) (Doc. 11) and pursuant to the Eleventh Amendment (Doc. 18). Although Plaintiffs responded substantively to the Department's first Motion to Dismiss (Doc. 24), Plaintiffs subsequently acknowledged that their claims against the State of Montana were indeed barred by the Eleventh Amendment. (Doc. 25). As a result, Plaintiffs filed the FAC to reallege their claims against Brendan Beatty in his official capacity as Director of the Montana Department of Revenue (Doc. 28).

The effect of an amended complaint is to supersede the original complaint, rendering it a nullity. *See Lacy v. Maricopa County*, 693 F.3d 896, 927 (9th Cir. 2012) (en banc) (the general rule is that an amended complaint "super[s]edes the original complaint and renders it without legal effect."). Therefore, Defendant's related motions to dismiss (Docs. 11, 18) are denied as moot.

### B. Motion to Dismiss Plaintiffs' First Amended Complaint

Plaintiffs first lodge an as-applied challenge under the Commerce Clause, Art. I, § 8, cl. 3, arguing that Section 16-12-203(2)(g) discriminates against non-residents who wish to participate in Montana's domestic marijuana market. (Doc.

7

28, ¶¶ 63–64, 75). The Commerce Clause both expressly grants Congress the power to regulate commerce among the several states and implicitly limits the states' power to discriminate against interstate commerce. *See* U.S. Const. Art. I, § 8, cl. 3; *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273 (1988). The Commerce Clause "encompasses an implicit or 'dormant' limitation on the authority of the States to enact legislation affecting interstate commerce." *Healy v. The Beer Inst., Inc.*, 491 U.S. 324, 326, n.1 (1989). "[I]n all but the narrowest circumstances, state laws violate the Commerce Clause if they mandate 'differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.'" *Granholm v. Heald*, 544 U.S. 460, 472 (2005) (quoting *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality of Or.*, 511 U.S. 93, 99 (1994)).

Plaintiffs next lodge an as-applied Privileges or Immunities claim, arguing that Section 16-12-203(2)(g) violates the Privileges or Immunities Clause of the 14th Amendment. (Doc. 28, ¶ 76). The Privileges or Immunities Clause provides that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States …." U.S. Const. amend. XIV, § 1. The Supreme Court has interpreted these "privileges or immunities" to include the right to travel, which embraces the right of newly arrived citizens to enjoy the same privileges or immunities as those enjoyed by other citizens of their new state.

*Saenz v. Roe*, 526 U.S. 489, 490 (1999); *See Slaughter-House Cases*, 83 U.S. 36 (1872).

Defendants move to dismiss the FAC on grounds that Plaintiffs have failed to meet the minimum requirements for standing and ripeness.

### 1. Standing

Defendants argue that Plaintiffs fail to satisfy the first element required for standing—"injury in fact"—for three reasons: (1) Plaintiffs' harms are linked to the uncertain outcome of a state administrative proceeding; (2) Plaintiffs have not applied for a marijuana license; and (3) Jerry Reed has not established residency in Montana. (Doc. 30 at 8–10). For their part, Plaintiffs contend their injuries stem directly from the MMRTA residency requirement, irrespective of the administrative proceeding's outcome. (Doc. 31 at 9). Specifically, Plaintiffs claim that if the administrative judge revokes Therapeutic Essentials' license, Section 16-12-203(2)(g) will "bar[] them from applying" for their own license; on the other hand, if Therapeutic Essentials retains their license, the Department "will still shutter [Plaintiffs'] operations" pursuant to Section 16-12-203(2)(g). (Doc. 31 at 9). Citing *Bishop Paiute Tribe v. Inyo County*, Plaintiffs aver that "[a]llegations that support a 'threat' to a 'concrete interest as actual and imminent' are sufficient to allege an injury in fact that meets the requirements of constitutional ripeness." 863 F.3d 1144, 1154 (9th Cir. 2017).

In *Bishop Paiute Tribe*, a tribal police officer was arrested by California law enforcement personnel for actions taken while detaining a suspect; subsequently, state law enforcement instructed tribal police to "cease and desist" their exercise of peace officer authority or be subject to state prosecution. *Bishop Paiute Tribe*, 863 F.3d at 1144–49. The Tribe sued, seeking clarification as to the scope of their authority. The court observed that, "[w]hile generalized threats of prosecution do not confer constitutional ripeness, a genuine threat of imminent prosecution does." *Bishop Paiute Tribe*, 863 F.3d at 1153. The court found that a genuine threat existed because "in addition to the actual arrest and prosecution" of the tribal officer, the state's "cease and desist letter credibly threaten[ed] imminent future prosecutions" if the Tribe failed to follow the state's demands. *Bishop Paiute Tribe*, 863 F.3d at 1153.

Turning to the instant case, Plaintiffs correctly observe that allegations supporting a "threat to a concrete interest" are sufficient to establish "injury in fact." (Doc. 31 at 10). However, to determine whether a genuine threat exists, the court

> look[s] to whether the plaintiffs have articulated a concrete plan to violate the law in question, whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and the history of past prosecution or enforcement under the challenged statute.

*Bishop Paiute Tribe*, 863 F.3d at 1154 (quoting *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000). The facts before this Court do not establish such an imminent threat. Unlike *Bishop Paiute Tribe*, there is no "cease and desist" letter or its equivalent, the Department has not threatened to enforce nor taken any action to enforce the challenged statute against Plaintiffs, and there is no "history of past enforcement under the challenged statute." Plaintiffs' argument that the Department is "insisten[t] on applying Section 16-12-203(2)(g)" against them is unsupported by the FAC and is insufficient to establish the existence of a "specific warning or threat." (Doc. 31 at 14).

Plaintiffs next rely on *Susan B. Anthony List v. Driehaus*, maintaining that the "injury in fact" prong "does not require [Plaintiffs] to wait until they are unconstitutionally punched in the face by the State" in order to establish standing. 573 U.S. 149 (2014). In *Susan B. Anthony List*, the court considered a pre-enforcement challenge to a criminal statute prohibiting core political speech. 573 U.S. at 161. The Ohio Elections Commission found probable cause under the statute to investigate petitioner, an anti-abortion organization, for its statement that a congressman had voted for "taxpayer-funded abortion." *Susan B. Anthony List*, 573 U.S. at 162.

The Commission never reached a final determination on the merits, however, and never enforced the statute against petitioner. *Susan B. Anthony List*,

573 U.S. at 162. The court nonetheless found standing because (1) "the petitioner's intended future conduct concern[ed] political speech, [which] is certainly 'affected with a constitutional interest'"; (2) the statute included petitioner's false statements about taxpayer-funded abortion; and (3) the threat of future enforcement was "obviously" substantial because petitioner was already the subject of a complaint for similar conduct. *Susan B. Anthony List*, 573 U.S. at 161–64.

The "threatened enforcement" alleged here does not rise to the "sufficiently imminent" variety contemplated in *Susan B. Anthony List.* Rather, Plaintiffs' injuries are tied to the uncertain outcome of revocation proceedings before an administrative law judge—which, notably, are not the result of the challenged statute, but rather of Therapeutic Essentials' alleged violations of Montana's disclosure requirements. (*See* Doc. 28, ¶ 48) (Claiming that "[i]f the license for Therapeutic Essentials should be revoked, the Reeds will immediately lose the substantial sums of money that they invested, in good faith, in the marijuana market in Montana."). Moreover, unlike *Susan B. Anthony List*, Plaintiffs aver only hypothetical threats of enforcement. Although Plaintiffs argue that the Department "will not allow" their application, they have not applied for—let alone been denied—a marijuana license. (Doc. 28, ¶¶ 50–54).

Finally, Plaintiffs' claims relating to Jerry Reed are even more conjectural. The FAC alleges Jerry Reed *intends* to move to Montana, become a resident, and

apply for a marijuana license; these "some day" intentions do not support a finding of the "actual or imminent injury" required for standing. (Doc. 29, ¶¶ 67–72, 76); *See Lujan*, 504 U.S. at 564 (citation omitted). Although Plaintiffs may indeed have "skin in the game" with respect to their investment with Therapeutic Essentials, any potential harm is related to the outcome of that proceeding and is not, at this juncture, related to their residency or lack thereof. (Doc. 31 at 13).

Accordingly, the Court finds that Plaintiffs have failed allege facts indicative of "sufficiently imminent" harm. Because Plaintiffs fail to establish an "injury in fact", the Court need not consider causation and redressability.

### 2. Ripeness

The doctrine of ripeness provides federal courts with a means to "dispose of matters that are premature for review because the plaintiff's purported injury is too speculative and may never occur." *Chandler*, 598 F.3d at 1122. Like their arguments above, Defendants similarly argue that Plaintiffs' as-applied constitutional challenges are unripe because (1) they have not applied for nor been denied a marijuana license based on residency, (2) their concerns of financial harm relate to the uncertain outcome of Therapeutic Essentials' administrative proceedings, and (3) Jerry Reed's claimed injuries relate to his plans to "someday" become a Montana resident. (Doc. 30 at 13–14).

In response, Plaintiffs contend that should Therapeutic Essentials' license be

revoked, "the Department has made clear it will rely upon [Section 16-12-203(2)(g)]" to prohibit Plaintiffs from operating under another license until they have satisfied Montana's residency requirement. (Doc. 31 at 16). Alternatively, Plaintiffs argue, "[i]f Therapeutic Essentials survives the revocation proceeding, another round will be sure to follow since the Department wants to enforce Section 16-12-203(2)(g) against [Plaintiffs]." (Doc. 31 at 16). Plaintiffs maintain that "[w]ithholding the resolution of this question would certainly cause great hardship to [Plaintiffs] because this issue is not going away for them." (Doc. 31 at 16, 17).

Plaintiffs' arguments only highlight the uncertainty of their alleged injuries. Indeed, as Plaintiffs themselves emphasize,

> Whether a claim is ripe generally turns on the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration. The "central concern [of the ripeness inquiry] is whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all."

(Doc. 31 at 16–17) (citing *Richardson v. City and County of Honolulu*, 124 F.3d 1150, 1161 (9th Cir. 1997) (quoting 13A Charles Alan Wright et al., Federal Practice and Procedure § 3532 at 112 (2d ed. 1984)). Pursuant to Montana Code Annotated § 16-12-104(5), the Department assesses applications to determine if the applicant should be denied. Mont. Code Ann. § 16-12-104(5). At this point, however, the injuries of which Plaintiffs complain are contingent upon "future events that may or may not occur"—specifically, the administrative judge revoking

Therapeutic Essentials' license, Plaintiffs applying for and being denied a license due to Montana's statutory residency requirement, and Jerry Reed moving to Montana and establishing residency. (*See* Doc. 28, ¶¶ 48, 51–54).

Plaintiffs' claims are therefore not yet ripe for federal adjudication. Should Plaintiffs apply for a license and be rejected pursuant to Section 16-12-203(2)(g), or should Jerry Reed move to Montana, establish residency, and apply for a license before he has resided in the state for one year, then perhaps Plaintiffs' concerns may ripen into a claim upon which this Court may issue relief.

### IV.   Conclusion

Therefore, for the reasons stated above,

IT IS ORDERED that Defendant's Motions to Dismiss Plaintiffs' original Complaint (Docs. 11, 18) are DENIED as MOOT.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 29) is GRANTED. Plaintiffs' First Amended Complaint is DISMISSED WITHOUT PREJUDICE.

DATED this 26th day of March, 2024.

Kathleen L. DeSoto
United States Magistrate Judge